UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20865-CR-RUIZ(s)(s)(s)
CASE NO. 22-20339-CR-RUIZ

UNITED STATES OF AMERICA

v.

NADER MOHAMAD FARHAT,

     Defendant.

_____

## FACTUAL PROFFER

     The United States of America and Nader Mohamad Farhat (hereinafter referred to as the "defendant" or "FARHAT") agree that if this matter had proceeded to trial, the government's evidence would have shown, beyond a reasonable doubt, that, among other things:

### Case Number 17-20865-CR-RUIZ(s)(s)(s)

     From at least as early as 2013 through his arrest in May 2018, FARHAT directed a network of money movers in South America, the United States, and elsewhere to facilitate the illicit transmission of money, either through bulk cash drop-offs or third-party wires, for a fee. Neither FARHAT, nor any of his co-conspirators or associates, had a license, as required by law, to operate a money transmitter business in the State of Florida or elsewhere in the United States, nor did they register, as required by law, with the Department of the Treasury to operate a money transmitter business.

### (1) Money laundering through bulk cash

     In recorded conversations in 2014 and 2015, a U.S. Drug Enforcement Agency (DEA)

1

confidential source (CS1) had told FARHAT that CS1 works with "narco money" and that "all the money is laundered." FARHAT and the CS discussed where FARHAT could receive cash to be laundered and FARHAT mentioned the United States, Paraguay, and Lebanon, among other places, and that he would charge a percentage for moving the money depending on where the cash was dropped.

On October 31, 2014, FARHAT indicated to CS1 that he could receive a cash drop-off in Miami. CS1 told him it was "225", meaning $225,000, and asked FARHAT to provide information regarding whom to contact. In a WhatsApp chat on November 6, 2014, FARHAT provided the name and number of an unindicted co-conspirator in South Florida and confirmed that FARHAT would charge 1.5% commission to CS1 for the movement of the money. Later that same day, CS1 sent a WhatsApp message to FARHAT with the undercover (UC) bank account information. On November 8, 2014, FARHAT responded that he would let CS1 know the following Monday if he could send the wire transfer to that company because, according to FARHAT, few people accept wire payments to freight forwarders. On November 13, 2014, CS1 received an email from FARHAT's email address containing a photograph of a wire receipt for $221,625. The same unindicted co-conspirator later confirmed to law enforcement that FARHAT had directed at least five large cash drop-offs in South Florida to him.

In September 2015, CS1 discussed with FARHAT the delivery of a $250,000 bulk cash drop in Paraguay, after which FARHAT would return to CS1 the $250,000 in two or three wire transfers. An agent from Paraguay's Secretaria Nacional Antidroga (SENAD SIU), in an undercover capacity posing as CS1's employee", arrived and delivered $250,000 in $100 bills to FARHAT in a black backpack in Paraguay. On September 14, 2015, FARHAT conducted a wire

transfer of $90,000 from an account at a Brazilian bank to an undercover account in South Florida that CS1 had provided FARHAT. On September 15, 2015, FARHAT conducted a second wire transfer of $49,997.89 from another Brazilian account to the same UC account. On September 18, 2015, FARHAT conducted a third wire transfer of $65,096 from a third Brazilian company account to the same UC account. On September 20, 2015, FARHAT conducted a fourth wire transfer of $41,210, to the same UC account in Miami, FL. FARHAT's commission was $3,696.11.

On December 14, 2015, FARHAT provided CS1 the name and phone number of "Dia," later identified as co-defendant Diya SALAME, as the person to receive $125,000 in purported drug proceeds in cash in Miami. The same day that FARHAT provided the contact information of SALAME to CS1, a DEA undercover (UC) and SALAME agreed to meet at a bar/restaurant in Doral, Florida, in order to conduct the money exchange. The UC handed a blue bag containing $125,000 in U.S. currency to SALAME. On December 17, 2015, FARHAT sent a WhatsApp message to CS1 confirming that FARHAT was to send two wire transfers totaling "121250", which he sent to a UC account in South Florida.

Additionally, more than a $1 million dollars was directed by FARHAT to be deposited into co-defendant Houssam HACHEM's account in or around 2014. The deposits were completed at various locations around Las Vegas and in Massachusetts, with the deposits frequently structured to avoid bank currency transaction reporting requirement. HACHEM then sent a ledger via email to FARHAT to report to him that the cash had been deposited into his account.

**(2) Money Laundering through Third-Party Wires**

FARHAT coordinated the transmittal of at least $25 million dollars in third-party wires sent through multiple shell companies in the U.S. from South America and elsewhere by FARHAT

3

and others he knew were engaging in money transmitting for a fee, and without a required state license or U.S. registration, to obscure the true origin of the funds. FARHAT's co-conspirators, including SALAME and DAHER, created false invoices to conceal the fact that no legitimate goods were being sold to the third-party companies or entities from which SALAME was receiving money.

Among the third-party wires that FARHAT directed be sent were more than $3,000,000 in wires from construction, flooring, and "trading" or "investment" companies in the United States that, based on law enforcement surveillance and attempted interviews, were not engaged in any legitimate business and were in fact simply paid to have their bank account used as a pass-through for transmitting money.

FARHAT also directed that large, round-number deposits be sent into his co-defendants' accounts from companies outside the United States that were unrelated to the cell phone business. On April 25, 2016, for instance, SALAME received into his business bank account a $200,000 deposit from a construction company in Mexico. SALAME also received over $100,000 between January and February 2017 into his Future Connections Chase bank account from a beverage company in Brazil. Even when co-defendant DAHER warned FARHAT, via WhatsApp message, that wires from countries like Switzerland or Venezuela where he did not do business would set off red flags, FARHAT continued to send wires unconnected to his co-conspirators' business.

SALAME frequently requested that FARHAT provide him the name of the company corresponding to third-party wires so that SALAME could generate fake invoices to create the appearance that he was sending actual goods to those companies. On September 15, 2016, for example, SALAME stated to FARHAT, "I need company info please" "To send product under

4

this week." Again the following day SALAME stated to FARHAT, "I need company info please" "I need to make invoices from where the money came from." On November 2, 2016, SALAME informed FARHAT, "Ya man they are not putting the company's names on the wire." On November 15, 2016, SALAME told FARHAT, "Look what I sent u on skype" "I need u to put that name on wire please." On December 28, 2016, SALAME told FARHAT, "I need u to put deferent names on wires please"

When FARHAT was arrested in Paraguay in May 2018, law enforcement found and seized more than $1 million in U.S., Brazilian, Argentinean, and Paraguayan currency hidden in a secret compartment at the currency exchange business that he operated. The aforementioned money was involved in or intended to be involved in the offenses described above.

### Case Number 22-cr-20339-Ruiz (formerly 18-CR-292(S-2) (Eastern District of New York)):

#### (1) Money laundering through bulk cash

Between the dates of February 23, 2018, and March 12, 2018, within the Eastern District of New York, FARHAT, the CS, a UC and co-defendant Enayatullah KHWAJA ("KHWAJA") coordinated a bulk cash delivery of $75,000 in purported narcotics proceeds in Melville, New York. The CS indicated to FARHAT that they needed to move narcotics proceeds in New York.

FARHAT provided the CS with a phone number, 516-369-3125, which was utilized at the time by KHWAJA. Codes for the money delivery were provided by FARHAT to the CS. The UC and KHWAJA exchanged text messages over the next few days and discussed "the order for the 75," which meant $75,000. On February 27, 2018, the UC and KHWAJA exchanged several more text messages and agreed to meet around lunch time. KHWAJA

however, needed to confirm the pending delivery with FARHAT, and a text messaged was sent to the UC stating, "Boss confirmed." The location and time of the delivery was agreed upon between the UC and KHWAJA for 1pm at the Hilton Long Island/Huntington Hotel 598 Broad Hollow Road, Melville, N.Y. 11747.

During the subsequent meet, the UC transferred to KHWAJA a plastic bag and shoebox containing the $75,000. The UC told KHWAJA that the seven (7) bundles of cash contained "10" and one contained "5." KHWAJA stated that it was ok and would let them know. The UC asked KHWAJA how much he could take at once because the UC was told that they would meet again in about one week after they receive their "product" (cocaine) in Paraguay. KHWAJA told the UC to let "them" know and they would reach out to him, a reference to FARHAT and indicating the FARHAT controlled the payments to KHWAJA. KHWAJA then drove off and the UC left the area. KHWAJA arrived back at his residence in Farmingdale, NY and walked into his house shortly thereafter with the plastic bag and shoebox containing the $75,000 of purported narcotics proceeds.

Additionally, throughout the course of the conspiracy, KHWAJA received at least $1,500,000 in bulk currency at the direction of FARHAT.

**(2) Money Laundering through Third-Party Wires**

Operating from Paraguay, FARHAT coordinated the transmittal of at least $20 million dollars in third-party wires sent through multiple shell companies in the U.S. from South America and elsewhere by FARHAT and others he knew were engaging in money transmitting for a fee, and without a required state license or U.S. registration, to obscure the true origin of the funds to ISK and TRONIX.

6

Among the third-party wires that FARHAT directed be sent, more than $2,000,000 in wires and checks from construction, flooring, and purported "trading" or "investment" companies in the United States that, based on law enforcement surveillance and attempted interviews, were not engaged in any legitimate business and were in fact simply paid to have their bank account used as a pass-through for transmitting money.

FARHAT also directed that large, round-number deposits be sent into his co-defendants' accounts from companies outside the United States and inside the United States that were unrelated to the cell phone business. On September 27, 2016, WhatsApp messaging revealed that KHWAJA received $100,000 in checks, coordinated by FARHAT. Furthermore, on October 5, 2016, WhatsApp messaging revealed that KHWAJA received a check in the amount of $94,821.04 at the direction of FARHAT.

During the course of the money laundering conspiracy, FARHAT utilized multiple brokers and methods to pay KHWAJA. At the direction of FARHAT, KHWAJA received checks through a company called ROMULLOS CONSTRUCTION, located in Massachusetts. A total of approximately $1,028,924 in check payments, at the direction of FARHAT were made from ROMULLOS to KHWAJA's company, TRONIX TELECOM from April 2014 through July 2017. ROMULLUS was not in the electronics market and never received cellular phones from TRONIX TELECOM.

On October 29, 2014, an email was sent from FARHAT to codefendant Roberto SAENZ, indicating a wire transfer was sent from NELFEL SA to ISK's Ocean Bank account, a company owned and operated by co-defendant Abdul Rahman KHWAJA ("ABDUL RAHMAN"). The third-party wire was in the amount of $29,940. The date on the wire transfer copy indicated the

7

wire was sent on October 24, 2014. On November 4, 2014, a third-party wire transfer was sent from ARA SA DE FINANZAS to ISK, ABDUL RAHMAN's company, in the amount of $131,000 at the direction of FARHAT.

On October 6, 2016, FARHAT and SAENZ exchanged WhatsApp messages detailing a third-party payment being made to ISK. FARHAT provided SAENZ with a wire transfer copy, showing a wire in the amount of $91,950 was sent from Continental SP Brasil LTDA to ISK. On October 7, 2016 SAENZ confirmed with FARHAT, "Acaba de llegar," (Spanish for "Just arrived") that the wire was received by ISK, ABDUL RAHMAN's company.

FARHAT also utilized a shell company, ARROW TRADING, which was registered in the state of Delaware, to send third-party wires to ISK. From September 2016 through January 2017, ARROW TRADING sent wire transfers totaling approximately $446,030 to ISK, ABDUL RAHMAN's company. ARROW TRADING was not in the electronics market and never received cellular phones from ISK.

In 2014, there were additional third-party payments to ISK. These additional third-party payments totaled approximately $411,000 to ISK from a number of companies including, but not limited to NELFEL SA, ARA S.A. DE FINANZAS, MSBB MONEY LTD and TOV CCTVM LTDA.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 8|23|22                 By: _____ for

MICHAEL E. THAKUR
ASSISTANT UNITED STATES ATTORNEY

8

Date: 8|23|22          By: _____

JUAN MICHELEN, ESQ.
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 8|23|22          By: _____

NADER MOHAMAD FARHAT
DEFENDANT

9